**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Phillip Joseph Stegall, Appellant.

Appellate Case No. 2015-001994

Appeal From Greenville County
D. Garrison Hill, Circuit Court Judge

Unpublished Opinion No. 2018-UP-009
Submitted November 1, 2017 – Filed January 10, 2018

**AFFIRMED**

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William Frederick Schumacher, IV, of Columbia, and Solicitor William Walter Wilkins, III, of Greenville, for Respondent.

**PER CURIAM:** Phillip J. Stegall appeals his conviction for solicitation of a felony, specifically murder, for which he received 10 years' imprisonment. Stegall argues the trial court erred in admitting evidence of a 2011 argument between his now ex-

wife (Ex-wife) and himself because (1) the evidence was not probative of his motive or intent, (2) it was not part of the res gestae, and (3) its probative value was substantially outweighed by the danger of unfair prejudice. We affirm.

In June 2011, Stegall and Ex-wife had an argument over whether Stegall should take their four-month-old son to work at Stegall's landscaping business. Ex-Wife would not let Stegall take their son to work because she feared their son would be harmed by spending significant time in hot weather. The argument escalated, Stegall was physically aggressive, and Ex-wife began recording the fight on her cell phone. In the recording, Stegall threatens to kill Ex-wife, stating he would "bury" her and that he wouldn't "get caught." Ex-wife called 911 and Stegall was arrested. Stegall was charged with criminal domestic violence but ultimately pleaded guilty to public disorderly conduct. The couple separated two months after the altercation and continued to fight over custody of their son. The couple divorced after one year of separation. In general, Ex-wife had primary custody of their son and Stegall had custody every other weekend. In January 2014, during a conversation with his employee regarding his ongoing child-custody dispute, Stegall offered his employee $5,000 to kill Ex-wife. Stegall's employee reported Stegall to the police and after a sting operation, Stegall was arrested. At trial, the court admitted evidence of the 2011 argument and Stegall was convicted.

We find the trial court did not abuse its discretion in admitting evidence of the 2011 argument between Stegall and Ex-wife. "The admission or exclusion of evidence is left to the sound discretion of the trial [court], whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012) (quoting *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001)).

> Although evidence of other criminal acts by a defendant is generally not admissible to prove the defendant's propensity to commit the crime with which he has been charged, such evidence may be admitted to prove motive, intent, identity of the perpetrator, lack of accident or mistake, or common scheme or plan.

*State v. Ford*, 334 S.C. 444, 451, 513 S.E.2d 385, 388 (Ct. App. 1999) (citing Rule 404(b), SCRE and *State v. Lyle*, 125 S.C. 406, 417, 118 S.E. 803, 807 (1923)). There must be a logical connection between the crime charged and the other criminal acts for evidence of the prior bad acts to be admissible under the *Lyle* exceptions. *Ford*, 334 S.C. at 451, 513 S.E.2d at 388.

Evidence of a defendant's prior criminal act is admissible when the evidence is "a necessary element" in understanding the defendant's motive and intent to commit the crime charged. *See Ford*, 334 S.C. at 452, 513 S.E.2d at 389. In *Ford*, the defendants were tried for robbery and the State sought to introduce testimony that the defendants had robbed the victim twice, two months earlier. *Id.* at 451, 513 S.E.2d at 388. This court affirmed the trial court's admission of the evidence, finding the fact the defendants "had previously robbed or attempted to rob [the victim] was a necessary element in understanding their motive and intent when they accosted [the victim]" for a third time. *Id.* at 452, 513 S.E.2d at 389; *see State v. Adams*, 322 S.C. 114, 119, 470 S.E.2d 366, 369 (1996) (finding the defendant's participation in an earlier convenience store robbery was admissible under *Lyle* because it established his intent at a grocery store robbery a half-hour later), *overruled on other grounds by State v. Giles*, 407 S.C. 14, 754 S.E.2d 261 (2014).

Further, this court has affirmed a trial court's decision to admit evidence of a previous domestic violence incident as evidence of motive and intent for committing assault and battery with intent to kill. *See State v. Sweat*, 362 S.C. 117, 121, 606 S.E.2d 508, 510 (Ct. App. 2004). In *Sweat*, the victim reported the appellant for criminal domestic violence and the appellant was sent to jail. *Id.* Approximately two months later, and eleven days after the appellant was released from jail, the appellant invaded the victim's residence, attacking the occupants. *Id.*, 606 S.E.2d at 510–11. The court found the evidence of the criminal domestic violence was admissible because "the jury could have inferred both (1) motive—that [the appellant] was driven by anger over [the victim] causing him to go to jail and terminating their relationship . . . ; and (2) intent—that [the appellant] maliciously sought to inflict harm upon" the victim and her new boyfriend. *Id.* at 126, 606 S.E.2d at 513; *see also Gov't of Virgin Islands v. Harris*, 938 F.2d 401, 406, 420 (3d Cir. 1991) (determining the trial court had properly admitted evidence of the defendant's physical abuse of his wife and statements he would kill her in another location, occurring between approximately four and seven years prior to his wife's murder for which he was currently charged, because his threats and violence were "highly probative in demonstrating his motive and intent" to kill and get away with it).

Here, the evidence was a necessary element in understanding Stegall's motive for soliciting someone to kill Ex-wife in January 2014. The 2011 argument occurred because Stegall and Ex-wife disagreed over a decision affecting their child—whether Stegall could take their son to work. In response to the disagreement, Stegall threatened to kill Ex-wife and stated he could get away with it. Likewise, the evidence indicates the reason Stegall solicited someone to kill Ex-wife was due

to Stegall's desire to obtain custody of his son. Further, similar to *Sweat* and *Harris*, the jury could have inferred both motive and intent from Stegall's threats and statements in the 2011 argument that he would get away with killing Ex-wife— disagreements over the custody and care of his son were obvious sources of frustration for Stegall, and with Ex-wife out of the picture, he would be free to make those decisions without resistance. With someone else committing the act, Stegall could distance himself so he would not "get caught."

We acknowledge the length of time between the prior bad acts and the crime charged—approximately two and a half years—but find that the length of time has not attenuated the probative force of the evidence. *Cf. Harris*, 938 F.2d at 406, 420 (threats and violence of the defendant occurring between approximately four and seven years prior to his wife's murder were "highly probative in demonstrating his motive and intent" to kill and get away with it). Additionally, the evidence in this case is not completely unrelated; rather, it is spread across a continuum leading to the solicitation of murder. The 2011 argument resulted in a domestic violence charge which, two years later, resulted in Stegall pleading guilty to public disorderly conduct. Stegall and Ex-wife began their one-year separation two months after the 2011 argument and continuously fought over the custody of their son. Also admitted into evidence were Stegall's handwritten notes detailing different plans for handling the ongoing custody battle as well as Stegall's disparaging accounts of Ex-wife's tactics during the custody dispute.

Moreover, we find the trial court did not err in determining the probative value was not substantially outweighed by the prejudicial effect of admitting evidence of the 2011 argument. "Evidence of other crimes, even if logically relevant to prove intent, is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *State v. Wilson*, 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001) (citing Rule 403, SCRE). "Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis, such as an emotional one." *Id.* Evidence of prior bad acts to show a defendant's motive and intent to commit the crime charged becomes significantly more probative when the defendant directly disputes his or her motive or intent. *See Ford*, 334 S.C. at 452, 513 S.E.2d at 389; *id.* (finding evidence that the defendants twice previously robbed the victim was highly probative of the defendants' guilt because the defendants directly disputed the State's allegations about their motive and intent in accosting the victim a third time).

Similar to *Ford*, Stegall directly disputed his motive for soliciting someone to kill Ex-wife, claiming he was joking and was not serious when he offered to pay to

have Ex-wife killed.  Indeed, the trial court aptly noted that motive and intent was central in the case.  Consequently, we find the trial court did not err in finding the probative value was not substantially outweighed by the danger of unfair prejudice.

Because we find the trial court properly admitted the prior bad act evidence under the *Lyle* exceptions, we do not need to address the issue of the 2011 argument's admissibility as part of the res gestae.  *See id.* at 453, 513 S.E.2d at 389 (declining to address admissibility as part of the res gestae because the evidence was admissible under *Lyle*).

**AFFIRMED.**[1]

**SHORT, THOMAS, and GEATHERS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.