**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Bobby Jones, Sr., Appellant.

Appellate Case No. 2018-001345

---

Appeal From Allendale County
Brooks P. Goldsmith, Circuit Court Judge

---

Unpublished Opinion No. 2021-UP-258
Heard March 4, 2021 – Filed July 7, 2021

---

**AFFIRMED**

---

Appellate Defender Adam Sinclair Ruffin, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Jonathan Scott Matthews, both of Columbia; and Solicitor Isaac McDuffie Stone, III, of Bluffton, all for Respondent.

---

**PER CURIAM:** Bobby Jones, Jr. appeals his conviction for criminal sexual conduct (CSC) with a minor, second degree. Jones argues the trial court erred in

(1) finding he violated *Batson v. Kentucky*[1] through his use of peremptory challenges and quashing the jury and (2) qualifying the State's witness as an expert in child sex abuse dynamics.  We affirm.

1. We find the trial court did not err in finding a *Batson* violation and quashing the jury.  *See State v. Inman*, 409 S.C. 19, 25, 760 S.E.2d 105, 108 (2014) ("In criminal cases, the appellate court sits to review errors of law only." (quoting *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001))); *see also McCrea v. Gheraibeh*, 380 S.C. 183, 186, 669 S.E.2d 333, 334 (2008) ("The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venire person on the basis of race or gender.").  *Batson* challenges follow a three-step process: (1) the opponent of the challenge makes a prima facie showing that the challenge was based on race, (2) the proponent of the challenge must provide a race-neutral explanation for the challenge, and (3) the opponent of the challenge must demonstrate that the given reason was pretext by proving purposeful discrimination.  *State v. Giles*, 407 S.C. 14, 18, 754 S.E.2d 261, 263 (2014).  The explanation provided by the proponent of the challenge does not have to be persuasive or even plausible, but it must be "clear and reasonably specific" to allow the opponent of the strike a chance to show pretext and to allow the court to evaluate the strike.  *Id.* at 21–22, 754 S.E.2d at 265.  Purposeful discrimination may be proven by showing the proponent did not strike similarly situated members of a different class or that the proponent's reason is "so fundamentally implausible as to constitute mere pretext despite a lack of disparate treatment."  *State v. Ford*, 334 S.C. 59, 64, 512 S.E.2d 500, 503 (1999).  "The ultimate burden always rests with the opponent of the challenge to prove purposeful discrimination."  *Giles*, 407 S.C. at 18, 754 S.E.2d at 263.  "Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record."  *State v. Shuler*, 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001).  "The trial [court's] findings of purposeful discrimination rest largely on [its] evaluation of demeanor and credibility."  *Id.*  Accordingly, "[t]he trial court's findings regarding purposeful discrimination are accorded great deference and will be set aside on appeal only if clearly erroneous."  *Inman*, 409 S.C. at 25, 760 S.E.2d at 108 (quoting *State v. Haigler*, 334 S.C. 623, 630, 515 S.E.2d 88, 91 (1999)).

In this case, Jones used three challenges to strike the only three Caucasian individuals selected for the jury, and the State argued this was a *Batson* violation.  During his explanation, Jones stated he struck one particular juror because of her occupation as a "housewife."  The court asked Jones to explain the rationale for

---

[1] 476 U.S. 79 (1986).

striking a housewife, and Jones stated he struck her for her occupation. The State argued striking the juror because she was a housewife was not relevant to the facts of the case and therefore was not a sufficient race-neutral reason. The court asked Jones to explain why the juror's occupation as a housewife was objectionable,[2] and Jones said it was because housewives manage households and make purposeful decisions. The court heard further arguments from both sides and ultimately found Jones's challenge was a *Batson* violation. Our review of the record leads us to conclude that, although the trial court did not neatly divide the *Batson* hearing into the three steps, the requirements were met: the State made a prima facie showing of a *Batson* violation, Jones offered an explanation, and the court, considering the totality of the circumstances and assessing the credibility and believability of each side, was persuaded by the State's argument. *See Shuler*, 344 S.C. at 615, 545 S.E.2d at 810 ("Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record."); *id.* ("The trial [court's] findings of purposeful discrimination rest largely on [its] evaluation of demeanor and credibility."). Accordingly, we affirm on this issue. *See Inman*, 409 S.C. at 25, 760 S.E.2d at 108 ("The trial court's findings regarding purposeful discrimination are accorded great deference and will be set aside on appeal only if clearly erroneous." (quoting *Haigler*, 334 S.C. at 630, 515 S.E.2d at 91)).

2. We find the trial court did not err in allowing Sitha Patel to testify as an expert in child sexual abuse dynamics. "[T]he law in South Carolina is settled: behavioral characteristics of sex abuse victims is an area of specialized knowledge where expert testimony may be utilized." *State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 271 (2018). Testimony regarding the behavioral characteristics of child sex

---

[2] Jones argues the trial court's request that he explain his reasoning amounted to burden shifting. We disagree as the record indicates the court asked why housewives were objectionable in order to provide a fair opportunity for the State to argue it was pretext and the court to evaluate it. *See Giles*, 407 S.C. at 21–22, 754 S.E.2d at 265 (stating that explanation provided by the proponent of the challenge does not have to be persuasive or even plausible, but it must be "clear and reasonably specific" to allow the opponent of the strike a chance to show pretext and to allow the court to evaluate the strike); *id.* at 22, 754 S.E.2d at 265 ("Reasonable specificity is necessary because comparison to other members of the venire for purposes of a disparate treatment analysis, which is often used at the third step of the *Batson* process to determine if purposeful discrimination has occurred, is impossible if the proponent of the challenge provides only a vague or very general explanation.").

abuse victims is nonscientific and governed by *State v. White*.[3]  *State v. Chavis*, 412 S.C. 101, 106, 771 S.E.2d 336, 338 (2015).  Under *White*, a witness may be designated as an expert if the court determines the witness is sufficiently qualified and his or her testimony is reliable.  *Id.* at 106–07, 771 S.E.2d at 339.  The court must also find that the evidence is admissible.  *State v. Tapp*, 398 S.C. 376, 388, 728 S.E.2d 468, 474–75 (2012) ("The expertise, reliability, and the ability of the testimony to assist the trier of fact are all threshold determinations to be made prior to the admission of expert testimony.").  Whether an expert is qualified and the expert's testimony is reliable and admissible is within the trial court's discretion and will not be reversed absent a prejudicial abuse of that discretion.  *Chavis*, 412 S.C. at 106, 771 S.E.2d at 338.  "An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions."  *Id.*

First, Jones argues Patel was not sufficiently qualified.  We disagree.  *See* Rule 702, SCRE (stating a witness may be an expert due to his or her knowledge, skill, experience, training, or education); *State v. Schumpert*, 312 S.C. 502, 505, 435 S.E.2d 859, 861 (1993) ("The qualification of a witness as an expert falls largely within the trial [court's] discretion."), *overruled on other grounds by State v. Stukes*, 416 S.C. 493, 787 S.E.2d 480 (2016).  Patel had a master's degree in social work, was trained in trauma-focused therapy, and was certified as a master social worker and forensic interviewer.  Additionally, Patel took continuing education courses, had given multiple presentations, had conducted over four hundred fifty forensic interviews, and had counseled approximately one hundred thirty children.  Although Jones takes issue with the quality of Patel's education and the process for her certifications, these considerations go to the weight of her testimony and not whether she was sufficiently qualified.  *See State v. Peer*, 320 S.C. 546, 549, 554–55, 466 S.E.2d 375, 377, 380–81 (Ct. App. 1996) (per curiam) (finding the trial court did not err in qualifying a witness as an expert because the witness, despite not having any formal training, demonstrated sufficient knowledge and experience).  Therefore, we find the trial court did not abuse its discretion in finding Patel was qualified.  *See Schumpert*, 312 S.C. at 505–06, 435 S.E.2d at 861 (stating the expert was qualified to testify about rape trauma syndrome when she held a master's degree in social work, attended training seminars regarding the subject matter, and had been involved in more than one hundred cases involving sexually abused children).

---

[3] 382 S.C. 265, 676 S.E.2d 684 (2009).

Next, Jones argues Patel was not reliable. We disagree. *See Chavis*, 412 S.C. at 108, 771 S.E.2d at 339 ("There is no formulaic approach for determining the foundational requirements of qualifications and reliability in non[]scientific evidence."); *Tapp*, 398 S.C. at 388, 728 S.E.2d at 474 ("[A]ll expert testimony, not just scientific expert testimony, must be vetted for its reliability prior to its admission at trial."). Jones contends this case is analogous to *Chavis*, in which our supreme court held the trial court erred in allowing a witness to testify as an expert that a disclosure of abuse had been made. *See* 412 S.C. at 107–08, 771 S.E.2d at 339 (finding the State failed to show the expert's testimony was reliable because she could not provide an error rate, her peer review was another interviewer reviewing her work to ensure she was using the proper protocol, and her quality control procedures were consistently using the particular protocol). However, *Chavis* is distinguishable because Patel was not qualified as a forensic interviewer and did not testify about whether, under a particular protocol, the victim made a disclosure of abuse by Jones. Instead, Patel was qualified as an expert in sexual abuse dynamics and testified in general terms about concepts such as family dynamics, grooming, the disclosure process, and recantation. *See State v. Jones*, 417 S.C. 319, 332, 790 S.E.2d 17, 24 (Ct. App. 2016) (finding the trial court properly determined the expert's reliability and distinguishing *Chavis* because the expert was not testifying as an expert forensic interviewer but was testifying in general terms about certain concepts of child sexual abuse). Accordingly, the trial court did not err in allowing Patel to testify as an expert, and we affirm on this issue.

Based on the foregoing, Jones's conviction is

**AFFIRMED.**

**WILLIAMS, THOMAS, and HILL, JJ., concur.**